295 F.2d 209
 INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL-CIO, R. K. Doud, S. V. Cornstubble, O. L. Broom, C. R. Casey, P. R. Davis and E. E. Fuqua, Appellants,
v.
CENTRAL AIRLINES, INC., Appellee.
 No. 18286.
 United States Court of Appeals Fifth Circuit.
 October 13, 1961.
 
 Charles J. Morris, Dallas, Tex., Mullinax, Wells, Morris & Mauzy, Dallas, Tex., Plato E. Papps, Washington, D. C., of counsel, for appellants.
 Walter E. Jordan, Harold E. Mueller, Karl H. Mueller, Hudson, Keltner, Jordan & Cunningham and Mueller & Mueller, Fort Worth, Tex., for appellee.
 Before RIVES, BROWN, and WISDOM, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 The sole issue here is whether a federal court has jurisdiction of this suit as one arising under the laws of the United States.
 
 
 2
 The International Association of Machinists, AFL-CIO, the certified bargaining representative of Central Airlines' mechanics and stock and stores employees, joined by six aggrieved employees, sued Central Airlines, Inc. in the United States District Court for the Northern District of Texas. The plaintiffs ask for enforcement of an award rendered by a system board of adjustment (arbitration). There is no diversity of citizenship. As to jurisdiction, the complaint alleges only that the court has jurisdiction of this action under 28 U.S.Code Section 1331,[1] "this being a matter * * * [that] arises under the laws of the United States, specifically under the Railway Labor Act." The district court dismissed the suit for lack of jurisdiction. We affirm.
 
 
 3
 Central Airlines and the Union entered into a System Board Agreement in accordance with Section 184 of the Railway Labor Act[2] imposing a duty on every air carrier and its employees, acting through their representatives, to establish a board of adjustment to settle disputes "growing out of grievances or out of the interpretation or application of any of the terms of [the collective bargaining agreement]". Pending the establishment of a permanent national board, similar to the National Railroad Adjustment Board, airlines and their employees are dependent upon contract for the establishment of adjustment boards.[3] Section 184 does not define the jurisdiction of a board, except to the extent of providing that a board shall have "jurisdiction not exceeding the jurisdiction which may be exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title".[4] It is clear, therefore, that although the statute requires the parties to establish a board, without a contract there would be no board. It is also clear that the parties must look to the contract for the composition, procedures, and jurisdiction (within Section 153) of an airline system board of adjustment.
 
 
 4
 In April 1958 Central discharged six of its employees, the individual plaintiffs, because they refused, while under suspension from the Company, to attend a hearing at which the Company denied them the right to have a union representative present. The discharged employees went through the preliminary stages of a formal grievance proceeding without reaching settlement, and the Union appealed the case to the system board of adjustment. The board, composed of two company representatives and two union representatives, deadlocked on the case. The National Mediation Board then appointed a neutral referee. The five-member board held that Central's refusal to allow the grievants the right of representation and the discharge of the grievants violated the collective bargaining agreement. The board rendered an award ordering that the six discharged employees be reinstated without loss of seniority and with full pay during the term of their attempted discharge. Central refused to comply with the award on the ground that the board exceeded its jurisdiction and authority as set forth in the "Governing Agreement" between the parties "covering the establishment and maintenance of a System Board of Adjustment".
 
 I.
 
 5
 The appellants' broadest contention, based on Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, is that the rights asserted in their complaint are necessarily federal rights flowing from federal law. The argument runs something like this: just as the Labor Management Act is a congressional mandate to federal courts to fashion federal law governing the substance of collective bargaining agreements under that act, the Railway Labor Act is a direction to create a body of substantive federal law governing the substance of collective bargaining agreements in the airline industry; the plaintiffs' cause of action comes from this new body of federal substantive law. Appellants recognize, of course, that Section 301 of the Labor Management Relations Act excludes any persons covered by the Railway Labor Act, but they contend that the two statutes, construed together, show a consistent statutory pattern.
 
 
 6
 A crucial difference between two statutes may be more significant than similarities. So it is here. Section 301 of the Labor Management Relations Act provides specifically for federal district court jurisdiction over suits involving collective bargaining agreements in industries affecting interstate commerce.[5] It was this provision that the Supreme Court interpreted in Lincoln Mills as "more than jurisdictional". In itself it was the statutory source for the congressional direction that federal courts "fashion a body of federal law for the enforcement of these collective bargaining agreements". 353 U.S. at 451. But there is no specific statutory provision for district court jurisdiction over suits under Section 184 of the Railway Labor Act. Since Section 184 has no express grant of jurisdiction that is "more than jurisdictional" and has no language even remotely equivalent to Section 301, Section 184 of the Railway Labor Act lacks the foundation on which the Court, in Lincoln Mills, based its decision that federal law (even if it were necessary to fashion a body of federal law) governs the substance of collective bargaining agreements under the Labor Management Act.
 
 
 7
 It is also clear that Congress did not choose the direct course of providing that federal law, statutory or decisional, should control the substantive features of labor contracts in the airlines industry. Nothing in Section 184 indicates any intention to affect the substance of collective bargaining agreements.[6] Section 184 of the Railway Labor Act relates solely to the procedure for settling disputes over the interpretation or application of the agreements. National policy, as expressed in the statute, requires that airlines and unions set up a procedure for settling grievances; federal law governs certain questions integral to this settlement process,[7] but the statutory purpose does not require that the underlying contract rights and duties be brought under federal law, and no inference to that effect can be drawn from any language in the statute. There is therefore no statutory necessity for fashioning an imposing edifice of substantive federal law as the jurisdictional basis for the rights asserted in this suit. Terminal Railroad Ass'n of St. Louis v. Brotherhood of Railroad Trainmen, 1943, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571;[8] Hettenbaugh v. Airline Pilots Ass'n International, 5 Cir., 1951, 189 F.2d 319.[9]
 
 II.
 
 8
 The appellants, more narrowly than in the contention just discussed, argue that Section 184 providing for airline system boards of adjustment creates a federal right in the enforcement of the award.
 
 
 9
 On this point we consider our decision in Metcalf v. National Airlines, 5 Cir., 1959, 271 F.2d 817 controlling. In Metcalf this Court faced substantially the same question at issue here, although, as the question was presented, the Court found it necessary to focus on the applicability of Section 153, subd. 1 (p)[10] to an award of a system board rather than on the federal question issue. This Court squarely held that in non-diversity cases an airline system board award is not enforceable in the federal courts under Section 184. In Metcalf, as in the instant case, an aggrieved employee sued to enforce an award of a system board established under Section 184 of the Railway Labor Act. The plaintiff contended that Section 153, subd. 1(p), establishing federal jurisdiction to enforce an award granted by the National Railway Labor Adjustment Board, applied to awards of an airline system board. This Court distinguished between awards of the National Railway Labor Adjustment Board and lower-status awards of an airline system board: the awards of an airline system board, unlike those of the National Railway adjustment Board, carry "no legislative determination as to their finality or as to their being a basis of federal suit jurisdiction".[11] Judge Tuttle, speaking for the Court, held: "[T]he legislative design of Congress is clearly expressed. Such design is to grant to those winning arbitration awards the right to sue on them in federal courts only when and if the Mediation Board creates a National Air Transport Adjustment Board whose award is ignored or not complied with by the carrier. Then only does Section 153(p) become operative in the air industry." 271 F.2d 817, 820.
 
 
 10
 At appellants' strongly urged request to take a fresh look at the jurisdictional issue notwithstanding Metcalf, we have examined the statute in its entirety.
 
 
 11
 As previously stated, the Act is bare of any provision for federal court enforcement of system board awards; and we have not found, nor have appellants pointed out, any provision carrying the implication that such enforcement was intended. See Duplisea v. Maine Central Railroad, 1 Cir., 1960, 260 F.2d 495. The Union contends that Congress must have envisaged federal jurisdiction of system board awards, since the provision for an adjustment proceeding is ineffectual if its results are not enforceable in the federal courts; Congress would not have established a system of half-way measures.[12] This argument loses its force when the statutory purpose is considered with reference to prevailing state law at the time of enactment. In 1936 courts in nearly all states treated a suit to enforce an agreement to arbitrate differently from a suit to enforce an arbitration award. Under common law an agreement to submit disputes to arbitration was revocable until an award was rendered, and would not prevent a suit on the contract.[13] Lakube v. Cohen, 1939, 304 Mass. 156, 23 N.E.2d 144. Statutes enacted to make arbitration agreements enforceable generally were limited to agreements concerning existing disputes. Only the statutes patterned on the New York Draft Act extended enforceability to future-disputes agreements,[14] and some of these excluded arbitration agreements in employment contracts. As late as 1950 a study revealed that,
 
 
 12
 "there is a total of ten states in which future-disputes clauses appearing in collective bargaining agreements will be enforced. [Cal., Col., Conn., Del., La., Mass., N. J., N. Y., Pa., Wash.]. In the remainder of the states, and in the federal courts (with some minor variances) future-disputes clauses may be disregarded with impunity." Gregory and Orlikoff, The Enforcement of Labor Arbitration Agreements, 17 U.Chi.L.Rev. 233, 241-242 (1950).
 
 
 13
 Statutes validating future-disputes clauses did not cover the full range of labor disputes; generally they were limited to disputes which could be the subject of an action at law or equity in a civil proceeding. Gregory and Orlikoff, supra at 242. On the other hand, the judicial approach in state courts after arbitration has already taken place has almost invariably shown a healthy respect for enforcement of an award. Even at common law an award was valid and binding on the parties. Enforcement could be obtained by an action at law upon the award itself. Fuerst v. Eichberger, 1931, 224 Ala. 31, 138 So. 409. The award winner could sue in equity for specific performance. United Fuel Gas Co. v. Columbian Fuel Corporation, 4 Cir., 1948, 165 F.2d 746. Or the award could be pleaded to bar action on the original claim by the award loser. Rhodes v. Folmar, 1922, 208 Ala. 595, 94 So. 745. Numerous state statutes were designed to facilitate enforcement of awards. "In many jurisdictions the award, when filed in court, could automatically be made the basis of a judgment; in others, of a motion to confirm, after which judgment would be entered." Phillips, Rules of Law or Laissez-Faire in Commercial Arbitration, 47 Harv.L.Rev. 590, 592 (1934). See Sturges, Commercial Arbitration and Awards, §§ 308-59 (1930). These statutes varied greatly in their coverage and their procedural requirements and courts in different states varied greatly in the extent of the review which they gave to arbitration awards, but, broadly speaking, state courts could be relied on to give effect to an arbitration award, in contrast with their unwillingness to enforce executory submission agreements. In the light of this historical context it cannot be said that a federal law imposing a requirement of compulsory arbitration but not providing for federal court enforcement of the arbitration award is a half-way measure.
 
 
 14
 The purpose of the Railway Labor Act is to provide prompt and orderly settlement of labor controversies in order to avoid disruption of the national transportation system by requiring arbitration of disputes.[15] Agreements to arbitrate in the airline industry were all voluntary before the 1936 Act, and the lack of enforceability undoubtedly reduced the incentive to contract for arbitration. Thus, even without any federal enforcement in non-diversity cases, the statute accomplished a major national objective in requiring an arbitration agreement in every airline employment contract. Construing the Act as not in itself furnishing an independent basis of jurisdiction for enforcement of awards does not mean that there would be no compliance with the arbitration agreements. There would often be voluntary compliance, of course, and there would be legal enforcement of the agreements in actions brought in state courts and in diversity actions in federal courts.
 
 
 15
 There are various reasons why Congress might have preferred to limit federal regulation to the requirement of arbitration rather than include enforcement of the award. Congress might have considered it more appropriate to leave this function to the state courts, because the contract questions involved would be governed by state law. Congress might not have wished to impose additional burdens on the federal district courts. In the ten years following the enactment of the Railway Labor Act in 1926 the states had become more receptive to arbitration; it is a fair inference that Congress might have concluded that federal enforcement of the arbitration awards was unnecessary. Whatever the motivation, the 1936 amendment extending the Railway Labor Act to the airline industry does not go as far in establishing federal control over the settlement process as did the original Act, under which the adjustment proceeding itself is conducted by government officials with a national board of adjustment. This difference in congressional treatment of the railroad industry as against the airline industry, and between these industries and other industries, cannot be ignored.
 
 
 16
 We are not asked to decide whether Congress provided substantive rights enforceable by a court of competent jurisdiction. The question is simply whether federal district courts are to enforce airline arbitration awards in non-diversity actions. Such enforcement is not necessary to accomplish the purpose of the statute. Federal district courts are courts of limited jurisdiction.[16] On the tenuous basis suggested here, we do not feel free to hold that the Act impliedly provides federal enforcement of an airline system board award as an independent basis for district court jurisdiction.
 
 III.
 
 17
 To many writers on the subject, the decisions dealing with federal question jurisdiction seem to fill the air with barbarous dissonance.[17] There is general agreement, however, on one principle: an action does not arise under federal law, for purposes of Sections 1331 and 1337 of the Judicial Code, unless the complaint, without benefit of the answer, discloses affirmatively a federally-created cause of action.[18] A mere reference to a federal act and an assertion that Section 1331 applies are not sufficient to show that the case arises under federal law.[19] This is not a matter of the sufficiency of pleadings under Rule 8, F.R.Civ.P., 28 U.S. C.A., but a matter of the plaintiff being able to demonstrate at the start of litigation that he is entitled to have a federal court hear his case.[20] Here the complaint fails to show an "arising under" claim. Amended pleading could not cure the defect.
 
 
 18
 The right asserted by the plaintiffs is a creature of contract, not a creature of a federal law. A reading of the complaint shows a claim originating in contract and based on violation of a contract. The system board of adjustment was established by private contract. The grievances presented alleged violations of contract, not violations of the Railway Labor Act. The grievants followed the grievance procedure stipulated in the contract. The board, established by contract to settle grievances, purportedly acted under authority as defined in the contract. The board rendered an award for violation of the contract, not for violation of the Railway Labor Act. This award rests on the board's interpretation of the contract. When it came to filing suit, the individual plaintiffs did not sue for wrongful discharge under the Act but for enforcement of the arbitration award. Properly enough, they did not allege in their complaint that the award was within the Board's jurisdiction or that the defendant denied the authority and jurisdiction of the board to make the award; assertion of the board's jurisdiction to make the award is not an essential part of such a claim. To make out a cause of action, sustainable by a court of competent jurisdiction, it was necessary for the plaintiffs to show only the contract (here attached to the complaint), the alleged violation of the contract, the submission of the dispute to the board in accordance with the contract, and the award in their favor. The "obligation of the contract being a creation of the state" and the "suit [being] built upon a contract", there "is no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law".[21]
 
 
 19
 A federal question can come into this case only by way of the plaintiffs' assuming that the defendant, as a defensive matter, will attack the authority and jurisdiction of the board; that such defense will require a construction of the Railway Labor Act, especially since the contract defines the board's jurisdiction in language that parallels Section 153, subd. (i) of the Act.[22] It is established beyond dispute, however, that where a federal question comes into a case only as a part of the defense, federal jurisdiction does not exist under Section 1331 and 1337. In a leading decision denying jurisdiction in a similar situation the Supreme Court summarized the principle as follows:
 
 
 20
 "Ever since Metcalf v. City of Watertown, 128 U.S. 586, 589 [9 S.Ct. 173, 174, 32 L.Ed. 543], it has been settled doctrine that where a suit is brought in the federal courts `upon the sole ground that the determination of the suit depends upon some question of a federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character.' But `a suggestion of one party that the other will or may set up a claim under the Constitution or laws of the United States does not make the suit one arising under that Constitution or those laws.' State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 464 [14 S.Ct. 654, 657, 38 L.Ed. 511]. The plaintiff's claim itself must present a federal question `unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194, 1200.
 
 
 21
 Since it is not part of the plaintiff's case to establish that the board acted within its jurisdiction, the instant case falls squarely within this rule.
 
 IV.
 
 22
 It is not enough that in the background a federal law compelled the parties to enter into the contract. "A suit", said Mr. Justice Holmes, "arises under the law that creates the cause of action"; the fact that justification for an alleged wrong may depend upon the federal patent law "is no more material to the question under what law the suit is brought than it would be in an action of contract." American Well Works v. Layne & Bowler Co., 1916, 241 U.S. 257, 36 S.Ct. 585, 586, 60 L.Ed. 987. If a cause of action is state-created, federal jurisdiction cannot be predicated on the fact that the outcome of the case may turn on an incidental federal question. It is the suit, "not a question in the suit, that must arise under the laws of the United States." Mr. Justice Holmes, dissenting in Smith v. Kansas City Title & Trust Co., 1921, 255 U.S. 180, 41 S.Ct. 243, 250, 65 L.Ed. 577. The Supreme Court adopted the Holmes test in two later leading cases.[23] In People of Puerto Rico v. Russell & Company, 1933, 288 U.S. 476, 483, 53 S.Ct. 447, 449-450, 77 L.Ed. 903, 909, the Court couched the principle in straight Holmesian language: "Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute. It may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive." Again, Mr. Justice Cardozo said, in Gully v. First National Bank in Meridian, 1936, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L. Ed. 70, 74: "To bring a case within [Section 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." It might be said that here the Railway Labor Act was an ingredient of the plaintiffs' claim, since the adjustment procedure was a result of the Act; but the Act simply provided the impetus for the contract creating the right of action.
 
 
 23
 This Court applied these principles in Amalgamated Association of Street, Electric Railway and Motor Coach Employees, etc. v. Southern Bus Lines, 5 Cir., 1951, 189 F.2d 219, 221, a non-diversity action by a union to compel an employer to arbitrate proposed changes in a contract of employment. The Union contended that the suit arose under the United States Arbitration Act, just as the appellants here rely on the Railway Labor Act. This Court stated:
 
 
 24
 "Upon the allegations of the complaint, we think it clear that the court below did not have jurisdiction over this controversy. No facts are alleged upon which the conclusion can legitimately be based that the District Court independently of the arbitration agreement would have jurisdiction of the `subject matter of a suit arising out of the controversy between the parties' as required by Section 4 of the Federal Arbitration Act, 9 U.S.C.A., § 4 * * * Viewing the case at bar against this background of established principle, we do not find in it the elements of federal jurisdiction. What is here involved is merely a controversy between the parties as to the construction of a contract which allegedly arises out of the laws of the United States respecting collective bargains between employer and employees in interstate commerce; but the right of action asserted does not arise out of those laws but only arises from the subsequent contractual relations of the parties. The wrongful breach of such relations does not confer federal court jurisdiction unless there is diverse citizenship."[24]
 
 
 25
 Duplisea v. Maine Central Railroad, 1 Cir., 1960, 260 F.2d 495, 496, was an action under the Railway Labor Act against a railroad for alleged wrongful discharge of the plaintiff.[25] In affirming an order of dismissal for lack of jurisdiction, the Court said:
 
 
 26
 "The complaint is conveniently vague as to the basis of federal jurisdiction * * *. Nor is there any allegation of a breach of a duty imposed or the violation of a right given by the Constitution, the Railway Labor Act, or any other federal statute * * *. Nor does the complaint raise any question as to the validity, construction, or effect of the Constitution or of any law of the United States. On the contrary, under the terms of the complaint, plaintiff seeks damages for an alleged wrongful discharge in violation of the terms of a collective bargaining agreement negotiated by the Railroad and the Brotherhood of Railroad Trainmen under the provisions of the Railway Labor Act."
 
 
 27
 See also Hayes v. Union Pac. R. Co. et al., 9 Cir., 1950, 184 F.2d 337[26] and Shipley v. Pittsburgh & L. E. R. Co., D.C.Pa.1947, 70 F.Supp. 870.[27]
 
 
 28
 Appellants rely on Peyton v. Railway Express Agency, 1942, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 and Crispin Company v. Lykes Brothers Steamship Company, D.C.1955, 134 F.Supp. 704, 706. We consider these cases inapplicable. Peyton was an action under the Carmack Act against a common carrier for items lost or damaged in interstate shipment. Crispin arose under the Carriage of Goods by Sea Act. Both statutes regulate in great detail the substantive obligations of the shipper-carrier relation. As the court said in Crispin: "[T]he only duty which the defendant owes plaintiffs springs from the shipper-carrier relation * * * [W]hether the complaint sounds in tort or in contract, the obligations, responsibilities and liabilities which result from the shipper-carrier relation are circumscribed by the terms of the statute." That is not the case here. The Railway Labor Act leaves to the parties the right to decide their obligations, responsibilities, and liabilities. The only statutory limitation is the requirement of a provision in the contract for arbitration and even this provides only that the board's jurisdiction shall not exceed the jurisdiction authorized under Section 153. This suit is nothing more than a state-created action to construe a contract.
 
 
 29
 It may seem ironical that of all the large industries engaged in interstate commerce only in the airline industry are parties to a collective bargaining agreement denied access to federal courts in non-diversity cases for the purpose of enforcing arbitration awards. If any industry should have ready access to federal courts because of the interstate character of its business, it is the airline industry. The answer we must discipline ourselves to give, however, is that federal district court jurisdiction is created only when Congress has provided for it; if the legislative pattern creates an anomaly, it is not for the courts to override the statutory dictates.[28] Here, jurisdiction lies with the state courts of Tarrant County, Texas.
 
 Judgment is
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The federal question problem is the same under § 1337 as under § 1331, except that § 1331 is somewhat more general and the amount in controversy must exceed $3000 (now $10,000). 62 Stat. 930 (1948), 28 U.S.C.A. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States." Prompted by questions from the court during oral argument, counsel for appellants filed a supplemental brief devoted in part to the contention that jurisdiction exists also by virtue of 28 U.S.C.A. § 1337. Section 1337 provides: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
 
 
 [2]
 44 Stat. 577 (1926) as amended to apply to the airline industry by 49 Stat. 1189 (1936), 45 U.S.C.A. §§ 151-188. Section 184 provides:
 "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on April 10, 1936 before the National Labor Relations Board, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.
 "It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181-188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title. * * *"
 Section 153, Second permits any carrier and its employees to agree "to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section." Section 153, subd. 1(i) provides that "[t]he disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * may be referred * * * to the appropriate division of the Adjustment Board. * * *"
 
 
 [3]
 In referring to a similar airline system board the court said: "This Board is not the Railway Adjustment Board, whose functions and power are fixed by the statute. This is a board created by contract." Edwards v. Capital Airlines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, 760. See also Metcalf v. National Airlines, 5 Cir., 1959, 271 F.2d 817
 
 
 [4]
 See footnote 2
 
 
 [5]
 Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a) provides:
 "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
 
 
 [6]
 Duplisea v. Maine Central Railroad, 1 Cir., 1960, 260 F.2d 495, 496, was a suit against a railroad for wrongful discharge. In holding that there was no federal question jurisdiction, the Court said: "No doubt the Railway Labor Act is an `Act of Congress regulating commerce' within the meaning of 28 U.S.C.A. § 1337. It would have been within the power of Congress to provide a federal cause of action for damages based upon a wrongful discharge of a railway employee in violation of the collective bargaining agreement. Cf. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L. Ed.2d 972. If such a federal cause of action had been created presumably the federal district court would have had jurisdiction, either under 28 U.S.C.A. § 1337, or under the more general provision of 28 U.S.C.A. § 1331, since more than $3,000 was involved. ¶ "But counsel for appellant was unable to point to any provision of the Railway Labor Act creating such federal cause of action. Nor have we been able to find any such provision. * * *" See also text to footnote 23
 
 
 [7]
 In Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, 16-17, certiorari denied 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455, this Court held that federal law governs the scope of judicial review of an award made by a system board of adjustment under § 184 of the Railway Labor Act, since the application of state law to this question would allow a freedom of review incompatible with the purpose of the statute to allow the parties to arbitrate their disputes with finality. In Sigfred, however, there was diversity of citizenship and enforceability of an award was not at issue
 
 
 [8]
 In that case, 318 U.S. 1, 63 S.Ct. 420, 423, Mr. Justice Jackson, organ of the court, stated:
 "The Railway Labor Act * * * does not undertake governmental regulation of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions. The federal interest that is fostered is to see that disagreement about conditions does not reach the point of interfering with interstate commerce."
 
 
 [9]
 In Hettenbaugh, 189 F.2d 319, 320, this Court held:
 "Likewise, the complaint does not state a federal question. To pose a federal question, there must be an allegation of a violation of some right granted by a federal statute or by the federal constitution. No violation of any such right is alleged. The most the complaint does in this case is to allege that the National Airlines was subject to the terms of the Railway Labor Act, and that the appellee had deliberately violated the obligation imposed on it by the act for the purpose of defeating the lawful objective sought to be obtained by said Act."
 
 
 [10]
 45 U.S.C.A. § 153 establishes the National Railroad Adjustment Board and provides a series of rules to govern its operation. Subsection (p) provides:
 "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board * * *."
 
 
 [11]
 In Metcalf, 271 F.2d 817, 819, the Court stated:
 "Congress made even more clear that it was not elevating to the same rank the status of an award by such system board in the airline industry as was granted to an award of the National Railway Labor Adjustment Board by then providing in Section 185 for the future creation of a similar National Board for the air industry when in the judgment of the National Mediation Board `it shall be necessary to have a permanent national board of adjustment.' * * * All the provisions of the Railway Labor Act are adopted for the air industry except section 153; instead of giving similar relief to [§] 153, special provision is made for adjustment of labor disputes by system or regional boards with no legislative determination as to their finality or as to their being the basis of federal suit jurisdiction."
 
 
 [12]
 State courts would be required to recognize the validity of arbitration agreements established under the federal law. In Metcalf, 271 F.2d 817, 820, this Court said:
 "The argument made by appellant that the statute must be construed so as to give the District Court jurisdiction because otherwise he is without a remedy to enforce a federally enacted right is, of course, without foundation. The state courts have full and complete jurisdiction to grant relief on such an alleged contractual right. There is nothing unusual in the holding that the state courts apply the federal law just as do the federal courts if the cause is one as to which [the] federal law controls."
 For a discussion of a state's constitutional obligation to enforce federally created rights see Comment, 73 Harv.L. Rev. 1551 (1960).
 
 
 [13]
 See generally Sturges, Commercial Arbitration and Awards §§ 15, 18, 76-83 (1930); Wolaver, The Historical Background of Commercial Arbitration, 83 U. Pa.L.Rev. 132, 138-44 (1934)
 
 
 [14]
 "The New York Arbitration Law (1920) was the first American statute to expressly embrace agreements to arbitrate future disputes. * * * The Draft Act, advocated by the American Arbitration Association, which is the basis of arbitration statutes in twelve states and of the United States Arbitration Act, 43 Stat. 883-886 (1925), 9 U.S. C.A. §§ 1-15 (1934), is patterned after the New York Arbitration Law." 26 Va. L.Rev. 327. See generally Simpson Specific Performance of Arbitration Contracts, 83 U.Pa.L.Rev. 161 (1934)
 
 
 [15]
 45 U.S.C.A. § 151a outlines the general purposes of the Railway Labor Act as follows:
 "The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein * * * (5) to provide prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."
 
 
 [16]
 Chicot County Drainage District v. Baxter State Bank, 1940, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Gillis v. State of California, 1934, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199; Neirbo Company v. Bethlehem Shipbuilding Corporation, 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167
 
 
 [17]
 In general, see Willard, When Does a Case "Arise" under Federal Laws? 45 Am.L.Rev. 373 (1911); Chadbourn and Levin, Original Jurisdiction of Federal Questions, 90 U.Pa.L.Rev. 639 (1942); Forrester, The Nature of a Federal Question, 17 Tulane L.Rev. 363 (1942); Federal Question Jurisdiction and Section 5, 18 id. 263, (1943); Bergman, Reappraisal of Federal Question Jurisdiction, 46 Mich.L.Rev. 17 (1946); Fraser, Some Problems in Federal Question Jurisdiction, 49 Mich.L.Rev. 73 (1950); Mishkin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157 (1953); London, "Federal Question" Jurisdiction, — A Snare and a Delusion, 57 Mich.L.Rev. 834 (1959); Hart and Wechsler, Federal Courts and the Federal System (1953), esp. 763-769. See also notes, Necessity that Federal Question Appear in the Complaint, 8 Wash & Lee L.Rev. 89 (1951); 3 Vand.L.Rev. 320 (1950)
 
 
 [18]
 Metcalf v. City of Watertown, 1888, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543; State of Tennessee v. Union & Planters' Bank, 1894, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. Co. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126. In each of these cases the court's decision turned on whether the plaintiff's right was created by state law or by federal law, even though the outcome would depend on the determination of a federal question. See London, Federal Question Jurisdiction, 57 Mich.L.Rev. 835, 848 (1959)
 
 
 [19]
 Doby v. Brown, 4 Cir., 1956, 232 F.2d 504, certiorari denied 352 U.S. 837, 77 S.Ct. 57, 1 L.Ed.2d 55; Beistline v. City of San Diego, 9 Cir., 1958, 256 F.2d 421, certiorari denied 358 U.S. 865, 79 S.Ct. 96, 3 L.Ed.2d 98. See also Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70
 
 
 [20]
 Chief Justice Marshall's dictum in Osborn v. United States, 1824, 9 Wheat. 738, 823, 6 L.Ed. 204, still stands: "The right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up. His right to sue is anterior to that defense, and must depend on the state of things when the action is brought." "Since the federal courts are courts of limited jurisdiction it is natural that their jurisdiction be made to appear at the time it is invoked. This means that in the case of an action commenced in the federal court and hence invoking its original jurisdiction the natural and logical principle requires the federal question to appear in the complaint, well pleaded, and without anticipation of defenses." Moore's Commentary on the Judicial Code, ¶ 0.03(22), p. 143 (1949)
 
 
 [21]
 Gully v. First National Bank in Meridian, 1936, 299 U.S. 109, 114, 57 S.Ct. 96, 98, 81 L.Ed. 70, 73
 
 
 [22]
 The collective bargaining agreement provides:
 "(e) The Board shall have jurisdiction over disputes between any employee covered by the Mechanics' Agreement and the Company, growing out of grievances or out of interpretation or application of any of the terms of the Mechanics' Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by existing agreements between the parties hereto."
 For language of Section 153, subd. 1(i), see footnote 2.
 
 
 [23]
 McGoon v. Northern Pacific Railway Co., D.C.N.D.1913, 204 F. 998, 1001, a case often cited, states the rule: "[T]he following is a correct affirmative rule: Whenever federal law grants a right of property or of action, and a suit is brought to enforce that right, such a suit arises under the law creating the right, within the meaning of statutes defining the jurisdiction of federal courts * * *. What, then, do the courts mean when they say that the construction of federal law must be involved in order to confer this jurisdiction? Certainly not that the case will necessarily turn upon an interpretation of the statute, but simply that the complaint must set forth a cause of action of which federal law is an essential ingredient, and which may, therefore, properly involve a construction of that law."
 
 
 [24]
 For other cases holding that the Arbitration Act does not furnish an independent basis for jurisdiction, see Amalgamated Association, etc. v. Southern Bus Lines. 5 Cir., 1951, 189 F.2d 219; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc., 2 Cir., 1933, 62 F.2d 1004; In re Woerner, 2 Cir., 1929, 31 F.2d 283; Mengel Co. v. Nashville Paper Products and Specialty Workers Union, 6 Cir., 1955, 221 F.2d 644
 
 
 [25]
 See footnote 6 for an additional quotation from this opinion
 
 
 [26]
 Hayes v. Union Pac. R. Co. et al., 9 Cir., 1950, 184 F.2d 337, 338, involved the question whether the district court had jurisdiction under the Railway Labor Act of an employee's complaint charging racial discrimination in the performance of a collective bargaining agreement. The Court held that there was no federal question:
 "[I]t is clear to us that the Federal Courts are not charged by federal law with the duty or function of policing the parties in the performance of collective bargaining agreement entered into pursuant to the Railway Labor Act. Congress did not, by the Railway Labor Act, grant jurisdiction to the Federal Courts to afford relief for breaches of performance of collective bargaining agreements. Appropriate tribunals have been established for that purpose. 45 U.S.C.A. § 153; National Railroad Adjustment Board; Slocum v. D. L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577 [94 L.Ed. 795]. It is only when collective bargaining agreements are unlawfully entered into or when the agreements themselves are unlawful in terms or effect, that federal courts may act. This is made quite clear by the Supreme Court in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 and Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. * * *"
 
 
 [27]
 In Shipley v. Pittsburgh & L. E. R. Co., D.C.Pa.1947, 70 F.Supp. 870, 878, twenty railroad employees sued to recover extra compensation under a contract authorizing extra pay for performance of special duty. The court, in holding that the Railway Labor Act did not confer "arising under" federal jurisdiction, said:
 "[T]he present suit is based on the provisions of a private contract entered into between the bargaining agent of the plaintiffs and the defendant company. The obligation of the contract is a creation of the state * * *. Nothing in the present suit involves the validity, construction or affect of the Railway Labor Act upon which the result of this action depends. Although the parties to this proceeding were governed by the act, the right of action, if one exists, is based on the alleged breach of a custom which it is alleged should be considered a part of the contract; the cause of action does not arise under the Railway Labor Act but only from the consequent contractual relations of the parties."
 
 
 [28]
 Irregularity in the legislative pattern is unfortunate, but it is not surprising in view of the fact that laws affecting similar problems in related areas may be enacted at different times and by different legislators. This is a case in point. The Railway Labor Act was enacted in 1926. The amendment of the Railway Labor Act extending most of its provisions to the airlines industry was passed in 1936. And the Labor Management Relations Act, which contains Section 301 relied on in Lincoln Mills, was enacted in 1947
 
 
 
 31
 JOHN R. BROWN, Circuit Judge (dissenting).
 
 
 32
 It is a paradox that the strength of the Court's opinion is that the result does not make sense. Of course the Court is not quite that harsh in its characterization of the result, but after spending pages demonstrating why Congress must have looked to the varying attitudes of 48 states for the enforcement of industrial arbitral decisions thought necessary to secure continuity to interstate air commerce, the Court puts it no less plainly in this euphemism: "If any industry should have ready access to federal courts because of the interstate character of its business, it is the airline industry." 295 F.2d 220.
 
 
 33
 The strength is derived from the inescapable historical fact that Congress also errs, and that if, as a consequence, the legislative machinery thus established is not adequate, the deficiency cannot be supplied by the Judiciary. But we ought to be very certain that the result is both inescapable and may not be bridged over by legitimate statutory interpretation within the traditional competence of the courts.
 
 
 34
 Of course my disagreement with this opinion carries with it a like difference with our earlier one in Metcalf v. National Airlines, Inc., 5 Cir., 1959, 271 F.2d 817.[29] The thesis of that case, echoed here, is that Congress deliberately chose to have the federal right vindicated in state courts.[30] That highlights this curious result. Under this case, Metcalf, and more directly under Sigfred,[31] the law to be applied by the tribunal is federal law. This presupposes that the right is of federal origin — here specifically under 45 U. S.C.A. §§ 181-188. Yet our present opinion proceeds on the assumption that the contract is a creature of state law. I am unable to comprehend how a contract compelled by federal law and to be interpreted by courts under federal law principles may relatistically be characterized as a creation of the state, so that a suit to enforce it is not one "arising under" federal law.
 
 
 35
 Air carrier and their employees are compelled to provide for industrial arbitration through System Boards of Adjustment. That was a recognition that serious disputes involving the most troublesome problems of constitutional law, due process and the like were being committed to tribunals made up of airplane pilots, aircraft engineers, mechanics and similar employees wholly untrained in the law or the business of judging. Moreover, it contemplated decision by boards made up of partisans with a neutral chairman only if needed to prevent an impasse.[32]
 
 
 36
 If there is anything clear in this legislative muddle, it is this: Congress in 1936 could not seriously have thought that stability and continuity to interstate air commerce would come from the undulating policies and frequently demonstrated hostilities of the legislatures and courts (or both) of 48 states in the enforcement of anything thought so essential to industrial peace as this system of governmentally compelled arbitration. Indeed, §§ 181-188 expressly include by reference §§ 157-159. These actions of the Railway Labor Act provide for arbitration over and beyond action before the Adjustment Board or the Mediation Board. These sections make the decision of the Board of Arbitration reviewable and enforceable solely in the United States District Courts. 45 U.S.C.A. § 157, § 158(k) (1), § 159, First, Second.
 
 
 37
 Whether for an airlines labor controversy the submission to and processing by a § 184 System Board of Adjustment constitutes such a § 157 "arbitration," I need not decide. What is plain is that any such § 157 arbitration is the substantial equivalent of the arbitration award discussed at great length in Part II of the Court's opinion. There the Court develops the thesis that Congress was optimistic that whereas state courts would be hostile to executory contracts to arbitrate, they would give cordial, effectual welcome to completed arbitration awards.[33] Here § 157 is proof, however, that where the decision partakes of an agreed contractual arbitration which has proceeded through decision, Congress recognized that the proper, and only proper, tribunal for review and enforcement was the federal system.
 
 
 38
 The result becomes even more incongruous if it is assumed that an arbitration decision of an airways System Board of Adjustment made pursuant to a collective bargaining contract under compulsion of § 184 is not a § 159 arbitration. According to this Court, "jurisdiction" of a suit for the enforcement of a System Board of Adjustment award "lies with state courts of Tarrant County, Texas." 295 F.2d 220. If, as to this very controversy, the parties would have prepared an agreement of arbitration under § 157, it is expressly required that review and enforcement be solely in the local United States District Court. If Congress, with its rather rich experience in the jealous hostility of the Judiciary to lay arbitration[34] was content with state tribunals as the sole effective means of endorsement of the compulsorily required contractual arbitration, it is strange indeed that it prescribed the federal route as to § 157 arbitration.
 
 
 39
 I do not mean to overemphasize § 157 as a technically precise investment of federal jurisdiction. We are searching for probable congressional intent. In that quest it points the way that Congress surely thought that for interstate air commerce it was essential that one system, and only one system, should undertake to police and enforce labor relations between air carriers and their employees. It must be remembered that the airline Labor Act was a complete departure from the existing structure. Whereas the National Labor Relations Board had only the power to protect bargaining in good faith, the airline Labor Act brought into play the National Mediation Board (§ 183) for the solution of "major" disputes — those on which the parties had not made a contract.[35]
 
 
 40
 It is inconceivable to me that with respect to contracts induced by the operation of the National Mediation Board under § 183 and the incorporation of §§ 151-152 and §§ 154-156, Congress at the same time meant for enforcement of arbitration decisions under such contracts to be committed to the unknown, unpredictable and uncontrollable attitudes of 48 states. Not the least of the absurdities is that an airplane flies from state to state. What state is to be the forum?[36] What state was the parent of this creature — the consensual contract containing the agreement to arbitrate? May any or all of the states beneath the route or routes traveled by the airline be resorted to? Is the continuity of essential air traffic to be at the plaintiff's choice of forum? What is to happen when several plaintiffs bring several suits in several states? Is effective federal control of an operational activity deemed so essential to national welfare to be precariously dependent upon the accident of diversity of citizenship?
 
 
 41
 Of course this Court does not shirk the obvious answers to these queries. It avoids them as ironical proof either of congressional aberration, of indecision or, more questionable, a conscious choice of turning it all back to 48 states. And under some ascetical discipline demonstrating real judicial restraint because the result is so obviously unsound, it despairs that with the signs all pointing one way, a barricade was somehow left across the road.
 
 
 42
 Just as Lincoln Mills cut through similar logical considerations to effectuate a clearly revealed policy, so here industrial arbitration compelled under §§ 181-188 is so much a part of the legislative machinery to protect the free flow of interstate air commerce that effectual enforcement of an award is realistically the assertion of a claim arising under a law regulating commerce.
 
 
 43
 I therefore respectfully dissent.
 
 
 
 Notes:
 
 
 [29]
 As the briefs in that case reflect, all — the parties and this Court — were preoccupied with the jurisdictional amount of $3,000 under 28 U.S.C.A. § 1331. No mention was made of § 1337
 
 
 [30]
 See footnote 12, supra. In these words we recognized that it was a federal right subject to federal principles: "There is nothing unusual in the holding that the state courts apply the federal law just as do the federal courts if the cause is one as to which [the] federal law controls." 271 F.2d 817, 820
 
 
 [31]
 Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, 16-17, certiorari denied 351 U.S. 925, 76 S. Ct. 782, 100 L.Ed. 1455, discussed in note 7, supra
 
 
 [32]
 The Court apparently sees some basis for congressional distinction between system, group or regional boards of adjustment under § 184 pending establishment of a National Air Transport Adjustment Board under § 185 and those of § 153 on the ground that the National Railroad Adjustment Board is a governmental tribunal. The Court says: "Whatever the motivation, the 1936 amendment extending the Railway Labor Act to the airline industry does not go as far in establishing federal control over the settlement process as the original Act, under which theadjustment proceeding itself is conducted by government officials with a national board of adjustment. This difference in congressional treatment of the railroad industry as against the airline industry, and between these industries and other industries, cannot be ignored." 295 F.2d 215. (Emphasis added.)
 Of course this is erroneous. The Railroad Adjustment Board and its four Divisions are each made up of partisan ap-appointees of labor and management. Government enters the picture only through the designation of a neutral umpire and the payment of his compensation by the National Mediation Board. See 45 U.S.C.A. § 153, subd. 1(g) (h) (k) (1). The National Mediation Board does, of course, bear the burden of compensation paid to certain staff clerks and assistants of the Adjustment Board. 45 U.S.C.A. § 153, subd. 1(t).
 
 
 [33]
 See notes 12 through 15 and related text. 295 F.2d 214
 
 
 [34]
 See United States Arbitration Act, 9 U.S.C.A. §§ 1-14 (1925)
 
 
 [35]
 Elgin, Joliet & Eastern R. Co. v. Burley, 1945, 325 U.S. 711, 722-728, 65 S. Ct. 1282, 89 L.Ed. 1886; Brotherhood of Railroad Trainmen v. New York Central R. Co., 6 Cir., 1957, 246 F.2d 114, certiorari denied 355 U.S. 877, 78 S.Ct. 140, 2 L.Ed.2d 107; Norfolk & P. B. L. R. Co. v. Brotherhood of Railroad Trainmen, 4 Cir., 1957, 248 F.2d 34, certiorari denied 355 U.S. 914, 78 S.Ct. 343, 2 L.Ed.2d 274
 
 
 [36]
 The selection of the state is only the beginning. What local law of the local state applies? For example, in Texas is it the arbitration Act, Tex.Civ.Stat. arts. 224-238 (Vernon 1959), or the special one covering labor controversies in arts. 239-249, or the case-made law? See 6 Tex.Jur.2d Arbitration and Award §§ 54-57 (1959)