**Hilda ROBLES, Plaintiff-Appellant,**

v.

**EL PASO COMMUNITY ACTION AGEN-CY, PROJECT BRAVO, INC., et al., Defendants-Appellees.**

**No. 71–1463.**

United States Court of Appeals, Fifth Circuit.

March 9, 1972.

Rehearing Denied May 5, 1972.

Kent Morrison, El Paso, Tex., for plaintiff-appellant.

Wellington Chew, Ralph Harris, Asst. U. S. Atty., El Paso, Tex., Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

This case is on appeal from a District Court dismissal for lack of jurisdiction. The defendants-appellees are Project Bravo, a non-profit Texas corporation, funded by the United States Office of

Economic Opportunity, and two of its officers. The National and District officers of OEO were originally sued but as to them Mrs. Robles has dismissed her appeal.

We affirm the dismissal, not for lack of jurisdiction, but for failure to state a claim upon which relief could be granted, Rule 12(b) (6) Federal Rules of Civil Procedure. In short, the plaintiff did not allege that she was dismissed for the exercise of constitutionally protected rights or for constitutionally impermissible reasons.

The record reveals that Mrs. Robles went to work for Project Bravo on December 5, 1967. In the fall of 1968 she resigned to accept employment with the United States Cerebral Palsy Association. After a month, however, she returned. In October, 1968, she was assigned to "the Barrio Program" of Project Bravo. On December 4, 1969, Mrs. Robles resigned her position as Community Organizer for Project Bravo and was assigned, temporarily, as a Barrio worker pending action on her application for a position with the Manpower Program.

The employer alleges that on April 10, 1970, Mrs. Robles absented herself from work and in the company of three other employees went to Juarez, where they spent three hours away from work, drinking beer.

Mrs. Robles admits her trip to Mexico by charging that a fourth employee known by the employer to have been on the trip was not discharged (Footnote 1, page 2, appellant's original brief).

On April 14, 1970, a supervisor for Project Bravo told Mrs. Robles and two of the employees that they were to be discharged because of the Juarez incident. Subsequently, he gave them the option of resigning. They resigned, April 14.

The next day, however, Mrs. Robles attempted to retract her resignation and demanded a hearing on the charges. The failure to get the hearing is the basis for this litigation.

Appellee, El Paso Community Action Agency Project Bravo, Inc., a community action agency for El Paso County pursuant to § 210 of the Economic Opportunity Act of 1964, Title 42, U.S.C. § 2790 et seq., on May 18, 1965, was incorporated as a private non-profit corporation under Texas law, empowered to sue and be sued, for the specific purposes of initiating, administering, conducting, supporting, encouraging, and participating in a community action program under the provisions of the Economic Opportunity Act of 1964. Its governing board consists of not over fifty-one persons concerned with community problems in El Paso County, including local public officials, representatives of the poor living in the areas served, and representatives of local private groups and interests concerned with social welfare, poverty, and the problems of minority groups in the community.

As a community action agency, the El Paso Community Action Agency Project Bravo, Inc., receives federal assistance by grant from the Office of Economic Opportunity to carry out a community action program pursuant to the provisions of the Economic Opportunity Act of 1964, Title 42, U.S.C. § 2790 et seq. It receives at the same time funds from county agencies, local merchants, private citizens, school districts, and the City of El Paso. Once federal funds are granted for the purposes of such program, the El Paso Community Action Agency Project Bravo, Inc., is required to carry out its program in accordance with the terms of the federal funds grant and the general and special conditions that may be laid down as the terms on which federal funds will be made available. These terms and conditions include requirements that funds be spent only for purposes specified in the approved application, requirements for accountability by means of internal fiscal controls, regular financial reports, and independent audits, and assurances against discriminatory employment practices or discriminatory treatment of beneficiaries on grounds of race or color.

Such terms and conditions do not give the Office of Economic Opportunity the right to direct the manner of carrying out the approved program, nor do they give the Office of Economic Opportunity the right to select or discharge Project Bravo employees.

Subsequent to its incorporation, Project Bravo, Inc., pursuant to the policy of the Office of Economic Opportunity, enacted and published regulations and policy statements dealing with the employment policies of the corporation, including the right of hearing under certain circumstances. These procedures, lengthy and detailed, provided:

> "Temporary employees, intermittent employees, and consultants are not covered by these procedures."

Individually, appellant filed her grievance on April 15, 1970. Thereafter, she exhausted the first three steps of the grievance procedure. On April 23, 1970, appellant made the following request in a telegram to Mr. Juan E. Favela, Chairman of the Personnel Committee of Project Bravo, Inc.:

> "I feel that my resignation of April 14, 1970, was submitted under duress in a situation of combined unusual circumstances and unusual stress.
>
> "Because of my sustained interest in the goals of the Program, I respectfully ask the personnel committee of the Project Bravo Board of Directors to grant me a hearing."

Her request for a hearing was denied. Such denial was explained in the September 9, 1970, affidavit of Juan Favela, Chairman of the Board of Directors of Project Bravo, Inc.:

> "The plaintiff, Hilda Robles, was formerly employed by Project Bravo, Inc., in El Paso, Texas, and was so employed until on or about the 14th day of April, 1970, at which time she tendered her resignation, which resignation was accepted.
>
> "Affiant would further state heretofore, on December 4, 1969, Hilda Robles resigned from her position as Community Organizer with Project Bravo, Inc., and was temporarily assigned as a Barrio worker pending an application she had on file for a position in the Manpower Program. That by virtue thereof, she had no tenure on the times and dates complained of to the job for which she now alleges she was fired or discharged from \* \* \*."

Having exhausted her administrative remedies, the appellant filed her complaint in United States District Court on August 5, 1970. She claimed that the manner of her discharge from the employment of El Paso Community Action Agency Project Bravo, Inc., without a hearing on the charges against her, violated her constitutional rights under the Fifth and/or Fourteenth Amendments as to procedural due process and denied her the benefit of her job under federal poverty legislation, without a hearing.

■ As stated, the District Court dismissed the complaint for lack of jurisdiction. We think there was jurisdiction under 28 U.S.C. § 1343(3) because Mrs. Robles did claim a deprivation of a constitutional right under color of state law. This, however, does not dispose of the appeal.

Relying on Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, the appellant claims that the manner of her discharge from the employment of El Paso Community Action Agency, Project Bravo, Inc., deprived her of her job without a pre-termination hearing. The question for decision in the *Goldberg* case was "whether a state that terminates public assistance payments to a particular recipient without affording him the opportunity for an evidentiary hearing prior to termination denies the recipient procedural process in violation of the Due Process Clause of the Fourteenth Amendment".

■ *Goldberg* dealt with rights conferred on the plaintiffs by statute and which they had been receiving pursuant to statute, afterwards cut off without notice, hearing, or an impartial adjudication. Obviously, Mrs. Robles had no

statutory right to be employed or continued in employment, being, as she was, a temporary, non-tenured employee, and *Goldberg* does not apply.

Mrs. Robles further argues that the manner of her discharge violated her right to procedural due process under the Fifth and Fourteenth Amendments. She cites a lengthy array of cases dealing with school teachers in desegregation cases, or teachers with tenure, or other public employees with tenure. These cases are clearly inapposite. Mrs. Robles was an employee without tenure.

Our decision in Thaw v. Board of Public Instruction of Dade County, Florida, 5 Cir., 1970, 432 F.2d 98 (rehearing en banc denied) dealt with a public school teacher without tenure and with no expectancy of reemployment. He had been discharged because of a personal disagreement with the principal. No constitutionally protected activity was involved. We held that he was not entitled to a hearing prior to his discharge. The rule is different, of course, where a person is discharged solely because of race or religion or because of an effort to exercise First Amendment rights, Pred v. Board of Public Instruction of Dade County, Florida, 5 Cir., 1969, 415 F.2d 851. We specifically stated, 432 F.2d at 100, "It *would* be too much to ask the school board to hold a hearing everytime it determines not to renew the contract of a probationary teacher, or everytime a terminated teacher requests a hearing without alleging unconstitutional action".

Lucas v. Chapman, 5 Cir., 1970, 430 F.2d 945, was a case in which a teacher who had an expectancy of re-employment was discharged after he had made remarks at a public meeting criticizing the school board and other faculty members. He was not given a specific advice of the reasons of his termination and received no hearing. We held that he was entitled to a hearing because First Amendment rights were involved. Again, we stated, however, that in matters of a nonconstitutional nature the board is not required to conduct hearings where the only issue is a difference of view over a school board's exercise of judgment and discretion.

On these considerations we are convinced that Mrs. Robles has not brought a case upon which relief may be granted. For this reason the judgment of the District Court is

Affirmed.