**Erma W. HINES, Plaintiff-Appellant,**

v.

**CENLA COMMUNITY ACTION COMMITTEE, INC., Defendant-Appellee.**

No. 72–1845.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1973.

Rehearing En Banc Denied April 10, 1973.

Wisdom, Circuit Judge, filed dissenting opinion and dissented from the denial of rehearing.

Chris J. Roy, Alexandria, La., for plaintiff-appellant.

Louis Berry, Daniel E. Broussard, Jr., Alexandria, La., for defendant-appellee.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge:

The plaintiff, Erma W. Hines, Executive Director of the Cenla Community Action Committee, Inc. (hereinafter called CCAC), was dismissed from her employment by a 14–13 vote of the Board of Directors of CCAC which occurred on February 28, 1972.[1] CCAC was organized as a community action agency to combat poverty in Rapides Parish, Louisiana, under Section 210 of the Economic Opportunity Act of 1964, Title 42, U.S.C. § 2790 et seq. CCAC was incorporated under Louisiana law as a private nonprofit corporation.

The plaintiff appealed her dismissal concurrently to the Regional Counsel of Region VI of the Office of Economic Opportunity, to the Board of the Personnel Committee of CCAC, to the Coordinator of Urban Development of Region VI, and to the Administrative Committee of CCAC. In her letter of appeal, the plaintiff claimed her termination was "null and void *ab initio*", since she was entitled as an employee of CCAC to an administrative appeal under the Personnel Policies Manual of CCAC as well as under Region VI's Guide to Grantee Personnel Management. Mrs. Hines claimed that under these provisions, she was required to be given (1) one month's time to bring her job performance up to the proper standards, (2) corrective counseling, (3) written charges, and (4) an opportunity for a hearing.

Henry C. Gillian, Deputy Director for Region VI of the Office of Economic Opportunity, replied in writing that the appeal procedures cited by the plaintiff did not apply to the executive director, since the executive director is "directly answerable to the board, and the board has the power to hire and fire [him], and there is no higher authority than the board to whom the director can appeal."

The plaintiff then filed suit in the United States District Court for the Western District of Louisiana. The amended complaint asserted jurisdiction under 28 U.S.C.A. § 1331.[2] It was charged that plaintiff had been "arbitrarily, capriciously, and without cause dismissed and/or terminated from her position." The plaintiff also stated that

---

1. The plaintiff admits that her dismissal was not racially motivated. Plaintiff does not allege that this court had jurisdiction under 28 U.S.C. § 1343.

2. 28 U.S.C. § 1331(a) states:
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

because she had no written notice of unsatisfactory work and no opportunity to appeal any adverse action taken against her she had been denied "due process of law" under § 2796(a) of the Economic Opportunity Act.

Further, the plaintiff sought to enjoin CCAC from advertising for a new director and employing a new director until the rights of the petitioner had been fully determined.

The defendant, CCAC, filed a motion to dismiss in that (1) the complaint failed to state a claim against the defendant upon which relief could be granted; (2) the service of process was improper; and (3) the court lacked federal question jurisdiction because the case did not arise under the Constitution, laws, statutes, and treaties of the United States, nor did it involve citizens of diverse states.

The District Court granted the motion to dismiss for lack of jurisdiction over the subject matter. It did not pass on the other reasons assigned for dismissal. The stated reasons for the dismissal were that:

1. The mere fact that a claim had its origin in federal law did not necessarily confer jurisdiction upon the federal courts;

2. The statute upon which the plaintiff relies, 42 U.S.C. § 2796(a), did not actually constitute a grant of the right which she sought to enforce, i. e. nothing in the Act indicated that it accorded anyone any rights with regard to employment;

3. Plaintiff alleged no facts to indicate that she was discharged as retribution for her exercising any constitutionally protected rights; and

4. The mere fact that a corporation had been set up to receive and to dispense federal funds did not make it a public entity nor did it make the plaintiff a public employee.

We affirm the judgment of the District Court.

### The Law

■ The plaintiff contends that general federal question jurisdiction exists under 28 U.S.C. § 1331(a) because her claim "arises under" either a federal statute or under the Constitution of the United States.

A. *Jurisdiction Arising Under a Federal Statute.*

Plaintiff asserts two bases for federal question jurisdiction as arising under a federal statute.

First, it is argued that the construction of a federal statute, 42 U.S.C. § 2796,[3] is involved; that 42 U.S.C. § 2796

---

3. 42 U.S.C. § 2796 states:

(a) Each community action agency shall observe, and shall (as appropriate) require or encourage other agencies participating in a community action program to observe, standards of organization, management and administration which will assure, so far as reasonably possible, that all program activities are conducted in a manner consistent with the purposes of this subchapter and the objective of providing assistance effectively, efficiently, and free of any taint of partisan political bias or personal or family favoritism. Each community action agency shall establish or adopt rules to carry out this section, which shall include rules to assure full staff accountability in matters governed by law, regulations, or agency policy. Each community action agency shall also

provide for reasonable public access to information, including but not limited to public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible. And each community action agency shall adopt for itself and other agencies using funds or exercising authority for which it is responsible, rules designed to establish specific standards governing salaries, salary increases, travel and per diem allowances, and other employee benefits; to assure that only persons capable of discharging their duties with competence and integrity are employed and that employees are promoted or advanced under impartial procedures

gave plaintiff certain rights as an employee of the Office of Economic Opportunity because that section ordered the Director of the Office of Economic Opportunity to prescribe rules regarding personnel policies. Plaintiff asserts that CCAC's "Personnel Policies Manual" and Region VI's "Personnel Guide" were created in direct compliance with the "federal command found in 42 U.S.C. § 2796," hence whether 42 U.S.C. § 2796 requires the formulation of personnel rules involves the construction of a federal statute. Plaintiff argues that federal jurisdiction exists, based on Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), because her claim will be supported if the federal statute is given one construction and defeated if it receives another.

Second, plaintiff states that she is a beneficiary of the Economic Opportunity Act under the rationale of the decisions in Gomez v. Board of State Employment Services, 5 Cir., 1969, 417 F.2d 569; Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970); and Euresti v. Stenner, 10 Cir., 1972, 458 F. 2d 1115.

The plaintiff asserts that as a beneficiary of the Economic Opportunity Act, she could sue a local community action agency in federal court for its failure to accord to her rights provided in the Economic Opportunity Act.

### 1. *Construction of a Federal Statute*

A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.

Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. See also Annot.: 12 A.L.R.2d 5, 20 (1950).

█ This rule of Shulthis v. McDougal has as its basic premise the idea that the "[federal] right *to be established is decisive* (emphasis added) [and] not the source of the authority to establish it." Puerto Rico v. Russel & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933). In the present case, plaintiff's right to employment by a private corporation [4] is not based on a federal statute. "Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute, [but] [i]t may not be invoked where the right asserted is nonfederal, merely because the plaintiff's right to sue is derived from federal law." *Id.* The plaintiff's claim must be founded directly upon federal law.[5] Gully v. First National Bank in Meridian, 299

---

calculated to improve agency performance and effectiveness; to guard against personal or financial conflicts of interest; and to define employee duties of advocacy on behalf of the poor in an appropriate manner which will in any case preclude employees from participating, in connection with the performance of their duties, in any form of picketing, protest, or other direct action which is in violation of law.

(b) The Director shall prescribe rules or regulations to supplement subsection (a) of this section, which shall be binding on all agencies carrying on community action program activities with financial assistance under this subchapter. He may, where appropriate, establish special or simplified requirements for smaller agencies or agencies operating in rural areas. These special requirements shall not, however, affect the applicability of rules governing conflicts of interest, use of posi-

tion or authority for partisan or nonpartisan political purposes or participation in direct action, regardless of customary practices or rules among agencies in the community. The Director shall consult with the heads of other Federal agencies responsible for programs providing assistance to activities which may be included in community action programs for the purpose of securing maximum consistency between rules or regulations prescribed or followed by those agencies and those prescribed under this section.

4. See *infra* our discussion of whether CCAC was a private corporation.

5. No questions arise in this case that would require federal courts to apply a uniform rule of federal common law. See Ivy Broadcasting Co. v. American Tel. & Tel. Co., 2 Cir., 1968, 391 F.2d 486, 491.

U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946) and Johnston v. Byrd, 5 Cir., 1965, 354 F.2d 982, 984. In short, the statute which the plaintiff seeks to invoke creates no explicit right of action to enforce her right to employment by CCAC. See T. B. Harms Co. v. Eliscu, 2 Cir., 1964, 339 F.2d 823, 827.

■■■ We do not agree that we have here a federal statute which requires construction. A case arises under federal law if rights claimed by one party may be defeated by one construction of the statute and sustained by opposite construction, Gully v. First National Bank of Meridian, *supra*, 299 U.S. at 112, 57 S.Ct. 96. Construction of a statute so as to sustain federal jurisdiction does not mean that the "case will necessarily turn upon an interpretation of the statute, but simply that the complaint must set forth a cause of action of which federal law is an essential ingredient, and which may, therefore, properly involve a construction of that law." McGoon v. Northern Pacific Railway Co., 204 F. 998, 1001 (D.C.N.D.1913). See also International Ass'n of Machinists v. Central Airlines, Inc., 5 Cir., 1961, 295 F.2d 209, 218 n. 23. The Economic Opportunity Act was not an ingredient of the plaintiff's claim; for the Act provided simply the impetus for the contract upon which the suit was brought. See Gully v. First National Bank in Meridian, *supra*, 299 U.S. at 114, 57 S.Ct. 96; Chaskin v. Thompson, 9 Cir., 1944, 143 F.2d 566 and cases cited therein; and Toledo, P. & W. RR v. Brotherhood of Railway Trainmen, 7 Cir., 1942, 132 F.2d 265, 268. Quite clearly, this case involves only private contractual rights. When a controversy between the parties may be decided under local law without the necessity of interpreting a federal statute, there is no

federal jurisdiction. Cabana Management, Inc. v. Hyatt Corp., 5 Cir., 1971, 441 F.2d 862, 864.

2. *Beneficiary Theory under Rationale of Gomez v. Board of State Employment Services*

In Gomez v. Florida State Employment Services, supra, the Court said that the plaintiffs could "obtain relief through the Federal Court only if damage was done to a federal right that the Federal Courts are empowered to protect." Gomez v. Florida State Employment Service, *supra*, 417 F.2d at 575. The Court went on to say:

> The existence of the federal right . . . turns on whether the Wagner-Peyser Act, 29 U.S.C.A. § 49 *et seq.*, and the regulations of the Secretary of Labor promulgated pursuant to the Act bestow rights that the workers may assert, and if so, whether the Wagner-Peyser Act and the regulations created a federal remedy
>
> . . .
>
> We start with the proposition that there can be no doubt that the regulations of the Secretary of Labor were intended to protect the interest of the workers . . .
>
> A civil remedy may be given to those protected by statutes or regulations by implication.

■■ In the present case the Economic Opportunity Act does not give the plaintiff a contract right for an alleged breach of an employment contract. Nor do we think that a contractual remedy can be implied or inferred from the Act since employees of these community action agencies were not the intended beneficiaries of the Act. The beneficiaries of the Act are poverty stricken individuals and families. The basic purpose of community action agencies is stated in 42 U.S.C. § 2781.[6]

---

6. 42 U.S.C. § 2781 states:
 Congressional statement of purpose
 (a) This subchapter provides for community action agencies and programs, prescribes the structure and describes the

functions of community action agencies and authorizes financial assistance to community action programs and related projects and activities. Its basic purpose is to stimulate a better focusing of all

Employees of community action agencies are not mentioned as beneficiaries of the Act in this Congressional statement of purpose. See Euresti v. Stenner, *supra,* 458 F.2d at 1118.

B. *Jurisdiction under Constitution of the United States*

Plaintiff contends that she had been "denied due process of law guaranteed her by the Fifth and Fourteenth Amendments of the Federal Constitution, when a grantee agency of the Office of Economic Opportunity deprived her of her position as a permanent employee without notice and a hearing."

1. *Jurisdiction Based on the Fifth Amendment*

■ CCAC did not become a public corporation merely because it received federal funds. Mitchell v. Boys Club of Metropolitan Police, D.C., 157 F.Supp. 101, 107 (D.C.D.C.1957). The distinction between a public corporation and a private corporation that has a charitable purpose was made in the case of the Trustees of Dartmouth College v. Woodward in the concurring opinion of Justice Story:

"When, then, the argument assumes, that because the charity is public, the corporation is public, it manifestly confounds the popular, with the strictly legal, sense of the terms * * * When the corporation is said, at the bar, to be public, it is not merely meant that the whole community may be the proper objects of the bounty, but that the government have the sole right, as trustee of the public interest, to regulate, control and direct the corporation, and its

available local, State, private, and Federal resources upon the goal of enabling low-income families, and low-income individuals of all ages, in rural and urban areas, to attain the skills, knowledge, and motivations and secure the opportunities needed for them to become fully self-sufficient. Its specific purposes are to promote, as methods of achieving a better focusing of resources on the goal of individual and and family self-sufficiency—

(1) the strengthening of community capabilities for planning and coordinating Federal, State, and other assistance related to the elimination of poverty, so that this assistance, through the efforts of local officials, organizations, and interested and affected citizens, can be made more responsive to local needs and conditions;

(2) the better organization of a range of services related to the needs of the poor, so that these services may be made more effective and efficient in helping families and individuals to overcome particular problems in a way that takes account of, and supports their progress in overcoming, related problems;

(3) the greater use, subject to adequate evaluation, of new types of services and innovative approaches in attacking causes of poverty, so as to develop increasingly effective methods of employing available resources;

(4) the development and implementation of all programs and projects designed to serve the poor or low-income areas with the maximum feasible participation of residents of the areas and members of the groups served, so as to best stimulate and take full advantage of capabilities for self-advancement and assure that those programs and projects are otherwise meaningful to and widely utilized by their intended beneficiaries; and

(5) the broadening of the resources base of programs directed to the elimination of poverty, so as to secure, in addition to the services an assistance of public officials, private religious, charitable, and neighborhood organizations, and individual citizens, a more active role for business, labor, and professional groups able to provide employment opportunities or otherwise influence the quantity and quality of services of concern to the poor.

(b) It is further declared to be the purpose of this subchapter and the policy of the Office of Economic Opportunity to provide for basic education, health care, vocational training, and employment opportunities in rural America to enable the poor living in rural areas to remain in such areas and become self-sufficient therein. It shall not be the purpose of this subchapter or the policy of the Office of Economic Opportunity to encourage the rural poor to migrate to urban areas, inasmuch as it is the finding of Congress that continuation of such migration is frequently not in the best interests of the poor and tends to further congest the already overcrowed slums and ghettos of our Nation's cities.

funds and its franchises, at its own will and pleasure. Now such an authority does not exist in the government, except where the corporation, is in the strictest sense, public; that is, where its whole interests and franchises are the exclusive property and domain of the government itself."

17 U.S. (4 Wheat.) 518, 636, 4 L.Ed. 629 (1819).

The Office of Economic Opportunity did not control the activities of CCAC so as to make CCAC a public corporation. See 42 U.S.C. § 2790(a)(2) and (b). We reached this same conclusion in Robles v. El Paso Community Action Agency, Project Bravo, Inc., 5 Cir., 1972, 456 F.2d 189, where we said:

> As a community action agency, the El Paso Community Action Agency Project Bravo, Inc., receives federal assistance by grant from the Office of Economic Opportunity to carry out a community action program pursuant to the provisions of the Economic Opportunity Act of 1964, Title 42, U.S.C. § 2790 et seq. It receives at the same time funds from county agencies, local merchants, private citizens, school districts, and the City of El Paso. Once federal funds are granted for the purposes of such program, the El Paso Community Action Agency Project Bravo, Inc., is required to carry out its program in accordance with the terms of the federal funds grant and the general and special conditions that may be laid down as the terms on which federal funds will be made available. These terms and conditions include requirements that funds be spent only for purposes specified in the approved application, requirements for accountability by means of internal fiscal controls, regular financial reports, and independent audits, and assurances against . . . discriminatory treatment of beneficiaries on grounds of race or color.
>
> Such terms and conditions do not give the Office of Economic Opportu-

nity the right to direct the manner of carrying out the approved program, nor do they give the Office of Economic Opportunity the right to select or discharge Project Bravo employees.

Robles v. El Paso Community Action Agency, Project Bravo, Inc., supra at 190–191.

 Since CCAC was not a public corporation controlled by the federal government, the plaintiff could not be a federal employee. Therefore, CCAC as a private employer had complete freedom of action and was not bound by the due process clause of the Fifth Amendment. See Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 897, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

2. *Jurisdiction Based on the Fourteenth Amendment*

[T]he right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure,

Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). See also Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

This right [7] applies only to jobs held in public employment. See Perry v. Sinderman, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) and especially see the concurring opinion of Burger, C. J., in Perry v. Sinderman, supra at 603, 92 S.Ct. 2694.

 Since the plaintiff in the present case was not employed by the state and there was no state involvement in her employment, procedural safeguards guaranteed by the Fourteenth Amendment did not apply to her private contractual employment. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The judgment of the District Court is affirmed.

---

7. See the discussion of the "right" and not the "privilege" to public employment in Board of Regents v. Roth, 408 U.S. 564, 571 n. 9, 92 S.Ct. 2701, 33 L.Ed.2d 548.

WISDOM, Circuit Judge (dissenting):

I respectfully dissent.

On the face of the complaint a federal question is present within the ambit of 28 U.S.C. § 1331. The district court had subject matter jurisdiction. Whether the complaint stated a cause of action is a different question. Whether, on the merits, the plaintiff is entitled to relief under the provisions of 28 U.S.C. § 2796(a) is a different question. The majority fuses these three questions into one. The result is to submerge the federal jurisdiction issue. *See* Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 72; Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939. And see Gomez v. First National Bank, 5 Cir. 1969, 417 F.2d 569.

Cenla Community Action Committee, Inc., domiciled in Rapides Parish, enjoys the domestic benefits of a Louisiana charter. But it is not a private, unfettered corporation in any real sense. Cenla owes its birth and continued existence to the beneficence of the United States government. In return, it is subject to the control of the federal government through the Office of Economic Opportunity under 42 U.S.C. § 2781 et seq.

As appears from the complaint, Cenla was organized for the purpose of qualifying as a grantee community action agency of the OEO under 42 U.S.C. § 2781. Congress adopted the Equal Opportunity Act to combat poverty, to create jobs, to disburse money for the reduction or elimination of poverty, all on a national scale. To insure federal supervision and uniformity, OEO divided the country into regions and adopted guidelines. Cenla, for example, is directly responsible to Region VI of OEO in Dallas, Texas. It must comply with the guidelines and policies formulated by Region VI in Dallas. In the event of any conflict between the policies and practices of Cenla with those of Region VI or federal legislation (as interpreted by OEO), Cenla must yield. In accordance with OEO Guidance VI 6900–1, "Guide to Grantee Personnel Management," Cenla promulgated a "Personnel Policies Manual" incorporating to a great extent provisions of OEO Regulations. This manual provides explicit safeguards for disciplinary action against an employee and also an appellate administrative review by Region VI in Dallas. The plaintiff, Mrs. Hines, attempted to appeal her dismissal as Executive Director of Cenla by a letter to the Regional Counsel in Dallas. The Deputy Regional Counsel replied, not stating that Region VI had no jurisdiction over Cenla but stating that:

> Where the director himself is terminated, that action is by the board itself, which has the power to do so, and there is no place from there to appeal. We do not interfere with an agency's personnel policies, even though the Regional Office reserves the right to approve all CAA personnel policies. As a practical matter, the CAP appeal procedures simply would not apply to the director because of the above reasons.

Mrs. Hines contends that under 28 U.S. C. § 2796(a) and the interpretation placed by Region VI in its Guide to Grantee Personnel Management, as well as by Cenla's own Manual, she is entitled to all the protection of any employee. She asserts, therefore, that she was denied due process as well as the rights accorded her under the Economic Opportunity Act and all the OEO regulations under that Act.

All of this appears on the face of the complaint. There is far more federal involvement here than there is in a parking garage or a Hill-Burton hospital. See Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45; Simkins v. Cone Mem. Hosp., 4 Cir. 1963, 323 F.2d 959. Moreover, ours is a Court which puts substance above form, facts above needless fictions, and national interest above all.

Congress provided $811,300,000 for community action agencies similar to Cenla. Congress does not give away that kind of money without strings.

Here there are federal statutes, rules, regulations, agency policies, and practices—so many federal strings that it is both naive and obdurately parochial for the Court to conclude that Cenla was a purely private corporation and that no federal law was involved. Justice cannot be done in this case without construing the Equal Opportunity Act and the federal regulations under it which control the policies and practices of the grantee community action agencies. The only thing that is not federal in this case was the charter. At issue is a federal question for the district court to recognize and decide.

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor of it, rehearing en banc is denied.

WISDOM, Circuit Judge, dissenting:

I dissent from the Court's denial of a rehearing for the reasons stated in my dissent to the original opinion of the panel.