Samuel JOHNSON, Petitioner,

v.

Gaston JUMELLE, Project Director, Charles Drew Neighborhood Health Center, St. Mary's Hospital and Catholic Medical Center of Brooklyn and Queens, Respondents.

No. 72 Civ. 4793.

United States District Court, S. D. New York.

Oct. 9, 1974.

Bedford-Stuyvesant Community Legal Services Corporation, Brooklyn, N.Y., for petitioner; Bernard M. Alter, of counsel.

Samuel Korb, Brooklyn, N.Y., for respondents Jumelle and Charles Drew Neighborhood Health Center.

Thomas A. Brennan, Jr., New York City, for respondents, St. Mary's Hospital and Catholic Medical Center of Brooklyn and Queens.

## MEMORANDUM

LASKER, District Judge.

Plaintiff, Samuel Johnson, received a notice of suspension from his position as Director of Community Organization with the Charles Drew Neighborhood Health Center (the Center) on March 27, 1972. His employment was terminated on June 27, 1972. He filed a petition in the Supreme Court of New York County pursuant to Article 78, Civil Practice Law and Rules (McKinney 1963) for reinstatement and back pay, and the case was removed to this court under 28 U.S.C. §§ 1441 and 1446. The original respondents, now defendants, were Gaston Jumelle, the Health Center's Project Director, the Center, Catholic Medical Center of Brooklyn and Queens (the Catholic Medical Center), and one of its divisions, St. Mary's Hospital (St. Mary's), the Office of Economic Opportunity (OEO), and the Department of Health, Education and Welfare (HEW).

Johnson alleges that he was removed from his position without fair notice or adequate procedures in violation of the due process clauses of the Fifth and Fourteenth Amendments. By an earlier opinion, 359 F.Supp. 361 (S. D.N.Y., 1973), the complaint was dismissed as to OEO and HEW for failure to state a claim on which relief could be granted. Jumelle and the Center now move to dismiss pursuant to Rule 12(b) claiming that the Center is neither a Federal nor State agency and Johnson's termination is, therefore, not "state action" subject to the due process provisions of the Fifth and Fourteenth Amendments. They also assert that the termination of Johnson's employment was not contrary to law because as a non-tenured employee, he could be dismissed

at any time.[1] The motion is treated as one for summary judgment under Rule 56, F.R.Civ.P. 12(c), since the parties have submitted exhibits and affidavits outside the pleadings which we have considered.

Since 1967 the Center has received federal funding as a community action program pursuant to the Economic Opportunity Act of 1964. (*See* 42 U.S.C. § 2781 et seq.) Until July 1, 1972, OEO was responsible for overseeing the program's funding; after that date, HEW assumed the task. The Community Development Agency of the New York City Human Resources Administration (CDA) disburses the funds from the federal agency to the Center pursuant to 42 U.S.C. § 2809(a)(4). CDA appointed the Catholic Medical Center, which then delegated St. Mary's Hospital, to ensure that proper medical services were supplied, to audit the Center's finances, and to supervise its operations if problems arose that were beyond the local organization's ability to handle. The project is governed by Charles Drew Neighborhood Health Center, a board of thirty-four elected low-income neighborhood residents.

I.

### The Fifth Amendment Claim.

While plaintiff has described the considerable extent of federal involvement in community action programs in general, his claim under the Fifth Amendment must fail, because, as noted in our prior decision, 359 F.Supp. *supra* at 362, Johnson was never a federal employee and neither OEO nor HEW ever promulgated regulations regarding the termination of the project's employees. *See* Robles v. El Paso Community Action Agency, 456 F.2d 189, 190–191 (5th Cir.

---

1. By letter dated June 27, 1974, counsel for the Catholic Medical Center and St. Mary's sought to move to dismiss the complaint as to them for failure to state a claim upon which relief may be granted. The letter cannot be treated as a motion under either Rule 12(b) or Rule 56 because it contains no notice of motion or affidavit of service and is, therefore, totally deficient in form. Since the court cannot dismiss a complaint for failure to state a claim except by motion or pleading, we do not at this time consider the relief requested.

1972). Even though these agencies have the authority to establish such rules, their unexercised power falls short of providing the requisite degree of federal involvement.

To justify a finding of federal action within the scope of the Fifth Amendment, OEO or HEW must have expressly undertaken regulation of the particular conduct under attack. Coleman v. Wagner College, 429 F.2d 1120, 1123–1124 (2d Cir. 1970). As the Court of Appeals stated:

> " . . . the state [or federal government] must be involved not simply with some activity of the institution alleged to have inflicted injury upon the plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968).

The record here establishes that OEO specifically declined to supervise employee grievances and delegated this responsibility in broadest terms to other participants in the statutory scheme. CA Memorandum 23–A, issued by the agency and dated August 26, 1966 (Exhibit G to Complaint) states:

> "Grantee and delegate agencies shall make provision for review of personnel actions by the governing body or a committee appointed by the Governing body in any case in which there is a claim of unfair treatment or of dismissal without cause." Id. at p. 6.

The federal agencies undertook neither to approve nor supervise any procedures established by the local agencies, and the Act did not obligate them to do so.[2]

Memorandum 23–A is the only federal regulation that discusses grievance procedures, and its terms hardly establish or enforce notice and hearing procedures for project personnel. Without greater agency involvement, the Center's action cannot be attributed to the federal government and it is not subject to the proscriptions of the Fifth Amendment. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 175, 177, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

## II.

### The Fourteenth Amendment Claim.

As noted above, the federal government channels grants for community action programs to Community Action Agencies (CAA) rather than to the projects directly. The Economic Opportunity Act empowers CDA, New York City's CAA, to do more than merely funnel funds. CDA is authorized not only to designate but also to supervise community action agencies. 42 U.S.C. § 2790(a).

Nevertheless, since the standard for determining the presence of state action within the ambit of the Fourteenth Amendment is identical to that measuring federal action under the Fifth Amendment, if CDA merely exercised the general responsibilities for CAA's set forth in 42 U.S.C. §§ 2790–2797, Johnson's request for relief under the Fourteenth Amendment would fail as did his Fifth Amendment claim. However, the facts demonstrate a much greater state than federal involvement.

CDA elected a board (the Council Against Poverty) to supervise the federal grants, pursuant to standards set forth in 42 U.S.C. § 2791(b)–(d). To comply with the directives of the Economic Opportunity Act, the Council promulgated regulations for agencies including the Center which it funds. In accordance with OEO's Community Action Memorandum 23–A, see supra, CDA's board did establish minimum due process procedures for employee termination (Exhibit G to Complaint). The regulation provides, among other things,

---

2. Since the federal agencies were under no mandate, their failure to promulgate procedure is not an abdication of responsibility that itself would constitute federal action. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed. 2d 45 (1961).

that notice of suspension and termination be sent thirty days before action is taken, and that a hearing be held within five days after receipt of request from an affected employee other than the Director. (Step 2(a) and 4(a)(1) of the Rule, Exhibit G to Complaint at pp. 348–349.) In addition, the regulation gives CDA itself a place in the procedure. Rule 9, for example, allows the Commissioner of CDA to waive any of the time limits stated through Step 6 upon a finding by him of sufficient cause, and within five working days after receiving notice of a Board's decision, an aggrieved Director or employee may appeal in writing to the Commissioner of CDA. (*See also* Step 6(e)).

■ Thus, in contrast to the lack of OEO or HEW involvement, CDA has established a procedure that encompasses the very essence of Johnson's complaint. Following the test set forth in Coleman v. Wagner College, *supra,* and Powe v. Miles, *supra,* we, therefore, hold that CDA has sufficiently engaged itself with due process requirements as to employee termination to justify characterizing the Center's and Jumelle's conduct toward Johnson as "state action".

Defendants' reliance on Hines v. Cenla Community Action Committee, Inc., 474 F.2d 1052 (5th Cir. 1973), is misplaced. While the plaintiff in *Hines* was a community action program employee who alleged due process violations similar to those asserted by Johnson, the Court's dismissal of the case for lack of jurisdiction does not compel a similar result here. In that case no state agency regulated employee grievances; here the Council Against Poverty did. *Id.* at 1058. The *Hines* Court apparently regarded the distinction to be critical since in an earlier case, Robles v. El Paso Community Action Agency, *supra* 456 F.2d at 191, in which a state had established rules for notice and appeal of terminations, the Court found that the plaintiff had stated a claim for relief.

Our decision is also consistent with prior decisions in this Circuit, in which

the absence of state rules relating to the precise subject of the complaint was emphasized as a significant factor requiring dismissal. *See,* Wahba v. New York University, 492 F.2d 96, 100 (2d Cir. 1974); Coleman v. Wagner College, *supra.* The court in Lefcourt v. Legal Aid Society, 445 F.2d 1150 (2d Cir. 1971) found no state action. In denying plaintiff relief, the Court stated, " . . . there has been no sufficient showing of governmental control, regulation or interference with the manner in which the Society conducts its affairs." *Id.* at 1155. In Powe v. Miles, *supra,* students alleged deprivation of First Amendment rights after having been disciplined for demonstrating on campus. The *Powe* Court found state action present only in the activities of the State College of Ceramics and not in other departments of Alfred University, noting that:

> "State action would be similarly present here with respect to all the students [of Alfred University] if New York had undertaken to set policy for the control of demonstrations in all private universities or in universities containing contract colleges." *Id.* 407 F.2d at 81.

Thus, as Judge Metzner observed, in cases in which state action was found the record established that "the critical state involvement was in the very prohibited action under constitutional attack." Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1023 (S.D.N.Y.1971).

We do not interpret Supreme Court cases or decisions of this Circuit as requiring that to establish state action the plaintiff must demonstrate either that the state regulation itself specifically violates the due process clause or that the state affirmatively foster deprivation of the alleged right. Because the presence of state action may be nonobvious or indirect, the Supreme Court has consistently emphasized that no single factor is controlling and that decisions in cases of this kind require detailed analysis of the

particular facts of a case. Moose Lodge No. 107 v. Irvis, *supra,* 407 U.S. at 173, 92 S.Ct. 1965; Burton v. Wilmington Parking Authority, *supra,* 365 U.S. at 722, 81 S.Ct. 856. Thus, for example, Justice Rehnquist's statement in Moose Lodge No. 107 v. Irvis, *supra,* 407 U.S. at 176–177, 92 S.Ct. 1965, 1973, that Pennsylvania could not "be said to in any way foster or encourage racial discrimination" was only one of many factors which lead to the conclusion that state action did not exist there. Indeed, the absence of a state law regarding racial discrimination was clearly an important consideration, for he stated that with the exception of a quota on licenses

> " . . . the Pennsylvania Liquor Control Board plays absolutely no part in *establishing* or enforcing the membership or guest policies of the club that it licenses to serve liquor." *Id.* at 175, 92 S.Ct. at 1972. (emphasis added.)

In contrast to the facts in *Moose Lodge,* the record here establishes that CDA not only promulgated, but also played a role in securing adequate due process procedures for community action project employees. Governmental encouragement of unconstitutional behavior is neither the sole nor necessarily the most crucial factor in determining the presence or absence of state action; and, accordingly, Johnson's failure to assert that CDA was responsible for his alleged injury does not preclude a finding of state action here.[3]

### III.

While the conclusion that Johnson has stated a claim to relief under the Fourteenth Amendment is alone sufficient reason to deny defendants' motion for summary judgment, the presence of material issues of fact further supports our decision.

In order to establish that Jumelle and the Center violated his right to notice and a hearing, Johnson must prove both that there was state action and that he was tenured. Perry v. Sinderman, 408 U.S. 593, 596, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The parties disagree on the critical issue whether Johnson was a tenured employee of the Center. It is true that Johnson does not dispute defendants' allegation that he was hired without a contract, but tenure may arise from custom as well as written agreement. Perry v. Sinderman, *id.* at 599, 92 S.Ct. 2694. Johnson asserts his is such a case. This issue can only be determined at trial.

### IV.

We turn finally to defendants' claim that the case should be dismissed for lack of diversity jurisdiction and for improper venue.

There is, of course, no merit to the diversity point since jurisdiction here is predicated independently on 28 U.S.C. § 1343(3). Nor is defendants' assertion of improper venue correct. At the time this complaint was removed from state court, OEO and HEW were defendants and resided in the Southern District of New York. 28 U.S.C. § 1392(a) provides that:

> "Any civil action, not of a local[4] nature, against defendants residing in different districts in the same State, may be brought in any of such districts." (footnote added)

Dismissal for improper venue under 28 U.S.C. § 1406 is warranted only where a case is *filed* in the wrong district. Since venue was proper at the time the case was removed, dismissal is unjustified.

---

3. Our reasoning comports with the most recent analysis of state action in this Circuit. See Perez v. Sugarman, 499 F.2d 761 (2d Cir., 1974).

4. The word "local" within the meaning of 28 U.S.C. § 1392(a), of course, refers to actions involving property, not to the district in which the facts giving rise to the complaint occur.

Accordingly, the motion to dismiss as to Jumelle and the Center is denied. There are material issues of fact regarding the status of Jumelle's employment and, at the very least, the *degree* of state action which cannot be determined except after trial.

It is so ordered.