**David JOSEPH, Plaintiff,**

v.

**The ULSTER COUNTY COMMUNITY ACTION COMMITTEE INC. et al., Defendants.**

**No. 76 CIV 3639 (LBS).**

United States District Court, S. D. New York.

Aug. 23, 1979.

Andrea Moran, Boiceville, N. Y., for plaintiff.

Burt Neuborne, New York City, Joshua N. Koplovitz, Woodstock, N. Y., for defendants.

SAND, District Judge.

■ Plaintiff alleges that the actions of defendants, the Ulster County Community Action Committee, and the members of its Board of Directors individually, in dismissing him from his position as Executive Director violated his constitutional rights to due process of law under the Fifth and Fourteenth Amendments. Plaintiff further asserts that individual members of the Board conspired to deprive him of those rights in violation of 42 U.S.C. § 1985.[1]

Defendants move for dismissal of the action under F.R.Civ.P. 12(b)(1) or 12(b)(6) or, alternatively, for a grant of summary judgment. For the reasons hereinafter stated, we grant defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

## FACTS[2]

The defendant, Ulster County Community Action Committee, Inc., ("UCCAC") was formed in 1965 as a New York not-for-profit corporation to act as the private entity responsible for administering and coordinating anti-poverty activities in Ulster County.[3]

Plaintiff was hired as Executive Director of UCCAC in February, 1975. In the summer of 1975 plaintiff questioned the legality of the existing Board of Directors and expressed his concern to a representative of the Community Services Administration ("CSA"), a federal agency charged with general oversight responsibility for anti-poverty corporations receiving federal funds. Plaintiff alleges that many Board members held their positions in violation of UCCAC's by-laws in that they either were not elected to their positions, or that they had forfeited their positions due to lack of attendance at meetings, or that their terms had expired.

On June 13, 1975, plaintiff advanced $5,000 in UCCAC funds to James Billups, an employee of the Ulster County YMCA, who was then serving as Chairman of UCCAC's Board of Directors. Billups represented to the plaintiff that the funds were to be used by the YMCA to operate a summer youth program, a representation that was subsequently proven false. Plaintiff did not immediately inform the Board of the loan. It is undisputed that the plaintiff still had not informed the Board of the outstanding advance on September 10, 1975, when the Board voted that plaintiff had satisfactorily completed his probationary period as Executive Director. On November 25, 1975, $2,000 was delivered to UCCAC's offices in partial payment of the June advance to Mr. Billups.

---

1. In his complaint, plaintiff also asserts another basis for federal jurisdiction:
   "The jurisdiction of this court is further invoked in that individual defendants acting as members of the Board of Directors of the Defendant UCCAC through acts of omission or commission have caused or permitted the defendant UCCAC to fail to achieve federal statutory standards and to violate federal statutes under 42 U.S.C. 2781, 42 U.S.C. 2790, 42 U.S.C. 2795, and 42 U.S.C. 2796." Neither plaintiff nor defendant addresses this jurisdictional basis in his brief. On the facts before us we conclude that the Economic Opportunity Act does not give a former employee a right to sue the directors of a community action agency for failure to achieve federal statutory standards or for violation of federal statutes.

2. On this motion to dismiss made before trial, we rely on the plaintiff's allegations of fact, on the affidavits of counsel for both parties and the accompanying exhibits, on the parties' statements submitted pursuant to Rule 9(g), and on the record of the examination before trial of plaintiff David Joseph. Where the facts are in dispute, we resolve all differences in favor of the plaintiff.

3. In enacting the Economic Opportunity Act of 1964, Congress provided for such local community action groups in the belief that local citizens know their communities better and would be better able to seize the initiative and provide vigorous leadership than persons outside the community. A community action agency would be run by a board composed of local officials, representatives of the poor, and members of business, labor and other groups in the community. The boards have the power "to determine major personnel, fiscal, and program policies, to approve overall program plans and priorities, and to assure compliance with conditions of and approval proposals for financial assistance . . . ." 42 U.S.C. § 2791(e). However, community action agencies are also subject to a variety of government regulations. 45 C.F.R. 1060–1070 (1974).

During the months of October and November, 1975, plaintiff and Mr. Billups became interested in purchasing a vacant church in the hope of renovating it as a permanent center for anti-poverty activities. Together with some other UCCAC Board members and members of the community served by UCCAC, they organized a corporation for the purpose of acquiring the church and leasing space to the anti-poverty organizations under their control. According to the plaintiff, he needed a $4,500 reserve to assure the successful financing of the downpayment on the church and sought an advance on his salary in that amount. He directed Mary Lou Rowland, the fiscal officer of UCCAC, to investigate the possibility of delaying payment of the organization's bills in order to generate sufficient cash to cover such an advance.

On December 3, 1975, Rowland notified plaintiff that she would not arrange the $4,500 advance on plaintiff's salary, citing the poor fiscal health of the organization. Plaintiff then suspended and sought to dismiss Rowland for her refusal to investigate the possibility of such a plan.

At a regular Board meeting on December 10, 1975, the Board members challenged plaintiff's actions in seeking to dismiss Rowland. In addition, having learned of plaintiff's loan to Billups, the Board at the same meeting criticized plaintiff for having made the advance without the Board's knowledge. Plaintiff responded by assuring the Board that the Billups advance had been fully repaid. However, the final payment on the loan was not recorded until the following day, December 11, when a cashier's check for $3,000 was deposited to UCCAC's account. Plaintiff now contends that the repayment was made in cash on December 10 and that he converted it to a cashier's check and deposited it on December 11. The December 10 meeting adjourned amidst vigorous disagreement.

On December 15, the Board met in the absence of plaintiff and Billups to consider the Executive Director's actions. The Board prepared a series of charges against plaintiff and personally delivered them to him on December 17, 1975. The Board sought to hold a formal hearing on the charges on December 18, but postponed it to January 7, 1976, at the request of plaintiff's counsel. Although plaintiff then chose not to attend the January 7 meeting, the Board met and voted to dismiss him as of January 9, 1976.

Plaintiff now contends that he did not attend the January 7 meeting because there were not enough valid members of the existing Board to legally function on internal matters, and that as a special meeting, it was not summoned in conformity with UCCAC's by-laws. Further, plaintiff contends that a fair hearing was impossible at that meeting due to the "irrational climate already exhibited [at the December 10 meeting]." [4]

Plaintiff appealed the Board's decision to the CSA. While acknowledging that three of the Board members were not legally entitled to sit, CSA ruled that plaintiff was terminated at a valid meeting at which a proper quorum was present. However, CSA at the same time recommended to UCCAC that it allow plaintiff an opportunity to rebut the charges against him. The UCCAC Board then offered plaintiff another chance for a hearing on his dismissal on January 28, 1976, but plaintiff again declined to participate.

At the request of CSA, the UCCAC Board of Directors was totally reconstituted during February and March, 1976. On April 20, the new Board appointed a personnel committee consisting of three persons, none of whom had been involved in the original decision to dismiss plaintiff, in order to consider plaintiff's status. The Personnel Committee refused plaintiff's request for an opportunity to present oral testimony but instead requested a written submission from plaintiff. After considering plaintiff's statement, the Personnel Committee recommended that plaintiff's dismissal be upheld. The Board accepted the recommendation.

---

4. Affidavit of Counsel for Plaintiff in Opposition to the Motion to Dismiss, ¶ 13.

*Jurisdiction over the Fourteenth Amendment Claim*

█ Plaintiff claims that his dismissal was effected without according him a trial type hearing before a lawfully constituted board of directors and, therefore, that he was deprived of his civil rights and his rights under the due process clause of the fifth and fourteenth amendments.

As a basis for his Fourteenth Amendment claim, plaintiff alleges a cause of action under 42 U.S.C. § 1983 [5] and alleges jurisdiction under 28 U.S.C. § 1343(3).[6] Defendants argue that because there is no state action involved, this Court lacks subject matter jurisdiction over plaintiff's claim.

Section 1983 does not provide a claim against private parties, but only against those persons acting "under color of state law". *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, it has generally been held that actions taken under color of federal law are not cognizable under § 1983. *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *Kotmair v. Gray,* 505 F.2d 744 (4th Cir. 1974); *Greenya v. George Washington University,* 167 U.S.App.D.C. 379, 512 F.2d 556 (D.C.Cir.), *cert. denied* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Williams v. Rogers,* 449 F.2d 513, 517 (8th Cir. 1971), *cert. denied* 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972). Therefore, the threshold question before us is whether the actions of the private nonprofit corporation UCCAC were taken "under color of state law".

Plaintiff bases his state action claim primarily on *federal* government involvement with the affairs of UCCAC. As to *state* involvement, he asserts only that the state imposed extensive regulations on some of the programs administered by UCCAC.[7] However, the mere existence of state regulation is not sufficient. State action depends on "whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the state itself". *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107b v. Irvis,* 407 U.S. 163, 176, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Further "[t]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968).

Applying these standards to the instant action, plaintiff's claim would fail even if he were to prove at trial that the state

---

**5.** 42 U.S.C. § 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1974).

The "under color of state law" prerequisite of § 1983 is synonymous with the state action requirement of the Fourteenth Amendment as first explicated in Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152 n. 7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**6.** This section provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(3) (1976).

**7.** According to Exhibit A of the statement pursuant to Rule 9(g) by counsel for defendant, which is not disputed by plaintiff, programs administered by UCCAC during 1975–76 were: Head Start, Nutrition Program for the Elderly, Mid-Hudson Valley Legal Services (partial subsidy), Community Outreach, Statewide Senior Action Council (advocacy program for the elderly), Food Stamps Outreach Program.

The first three of these were subject to special state and/or local regulations.

regulations over some of UCCAC's programs were pervasive because the state was not involved in the challenged activity itself. The plaintiff does not claim, nor does it appear from all the facts presented, that the State of New York regulated UCCAC's personnel policies or was in any way involved with the plaintiff's dismissal. See *Graseck v. Mauceri,* 582 F.2d 203 (2d Cir. 1978), *cert. denied sub nom. Graseck v. Middlemiss,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 91 (1979).

Because we find that there was no state action, we conclude that this Court lacks jurisdiction over plaintiff's claim under § 1983.

### Jurisdiction over the Fifth Amendment Claim

■ Plaintiff further asserts a violation of his right to due process of law under the Fifth Amendment to the Constitution, and alleges 28 U.S.C. § 1331 [8] as the jurisdictional basis for this claim. Defendants respond that UCCAC is a private agency and that the actions of the UCCAC Board of Directors cannot be attributed to the government so as to subject it to Fifth Amendment due process requirements.

Even assuming *arguendo* that plaintiff could establish a claim for damages in the necessary jurisdictional amount, and recognizing that a cause of action and damages remedy can be implied directly under the Constitution, *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) jurisdiction of this Court depends on a

showing that UCCAC can be considered a federal agent or instrumentality.

UCCAC did not become a public corporation merely by receiving federal funds. *Wahba v. New York University,* 492 F.2d 96 (2d Cir.), *cert. denied* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Hines v. Cenla Community Action Committee, Inc.,* 474 F.2d 1052, 1057 (5th Cir. 1973).

Moreover, the CSA did not control the activities of UCCAC to such a degree as to make UCCAC a federal agency. In *Hines v. Cenla, supra,* another community action agency was held to be a private employer.[9] Although plaintiff cites no authority in support of his position, he contends that *Hines* was wrongly decided. According to plaintiff, CSA's approval of his dismissal and its requirement for a restructuring of the Board of Directors, together with the general scheme of government regulation under which UCCAC functioned, converted UCCAC's actions into government actions.

Concededly, the composition of the Board of Directors was subject to government regulation.[10] Routine personnel decisions, however, were left to the control of the local board.[11] Moreover, in enacting the community action legislation, Congress sought to give local agencies broad authority over operation of their own programs. The statute expressly provides for major areas, in addition to personnel, which are left to the control of the local agencies. 42 U.S.C. § 2791(e) (1973).

Accordingly, we conclude that federal regulation of this community action agency

---

**8.** This section provides in relevant part:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." 28 U.S.C. § 1331 (Supp.1979).

**9.** Similarly, in *United States v. Orleans,* 425 U.S. 818, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) the Supreme Court held that community action agencies are not federal agencies or instrumen-

talities within the meaning of the Federal Tort Claims Act.

**10.** See note 3, *supra.*

**11.** 42 U.S.C. § 2791(e) (1973); By-laws of the Ulster County Community Action Agency, revised and adopted March 19, 1975 (Exhibit A of Brief for Plaintiff in Opposition to Motion to Dismiss).

Apparently the only justification for CSA intervention in this instance was the controversy over the legality of the Board itself. It was this unresolved issue which precipitated plaintiff's challenge as to the Board's authority to dismiss him.

was not so pervasive as to transform the private agency into a federal instrumentality for purposes of an employee's claim of due process violations. As a private employer, defendant UCCAC was not bound by the due process clause of the Fifth Amendment. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), and therefore, this claim must also be dismissed for lack of subject matter jurisdiction.[12]

### Conspiracy claim under § 1985

Plaintiff also asserts that defendants conspired to deprive him of his right to due process of law and bases this claim on 42 U.S.C. § 1985[13] and its jurisdictional counterparts 28 U.S.C. § 1343(1) and (2).[14] For the reasons hereinafter stated, we also dismiss this claim.

Neither the facts alleged nor the evidence before us provides any basis for a § 1985 claim. To the contrary, it is undisputed that the Board of Directors, in December, 1975 and in January, 1976, provided plaintiff with several opportunities to rebut the charges against him in a trial type hearing. Inasmuch as the Board provided these opportunities to plaintiff, the plaintiff cannot now claim that the Board's decision in May to deny his request for a hearing was the result of a conspiracy.

Moreover, the plaintiff does not claim, nor do the facts suggest, a "class-based invideously discriminatory animus" on the part of defendants, required as an element of a § 1985(3) cause of action.[15] *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975). Rather, plaintiff's complaint indicates only that opposition to plaintiff among the staff and Board members was based on opposition to plaintiff's job performance.[16]

Therefore, we conclude that plaintiff's claim of conspiracy must be dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.

---

12. Our finding that UCCAC was a private employer makes it unnecessary to consider whether the Board which originally fired plaintiff was illegally constituted. Even if plaintiff was not validly terminated until the reconstituted board acted, his due process claims still fail because UCCAC, as a private employer, was not subject to the requirements of the due process clause.

13. This section provides in relevant part:

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985 (1974).

14. These sections provide in relevant part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;"
28 U.S.C. § 1343(1), (2) (1976).

15. Plaintiff's allegations are devoid of any suggestion that racial discrimination was a factor in his termination.

16. See Plaintiff's complaint, ¶ ¶ 19–29.